IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DANIEL WEBB,** *et al.* : | |
| Plaintiffs, : | |
| : | |
| v. : | CIVIL ACTION NO. 11-2456 |
| : | |
| **OAK LEAF OUTDOORS, INC.,** *et al.*, : | |
| Defendants. : | |
| **LIBERTY SURPLUS INSURANCE** : | |
| **CORPORATION** : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 13-6261 |
| : | |
| **OAK LEAF OUTDOORS, INC.,** *et al.*, : | |
| Defendants. : | |

**MEMORANDUM OPINION**

**Rufe, J.**                                                                                                    **March 27, 2015**

**I.     INTRODUCTION**

Daniel Webb suffered catastrophic injuries during a hunting trip in 2010 when he fell from a tree while using a tree stand manufactured by Lone Wolf Manufacturing, Inc. and sold through a Cabela's store. In the first of these two related cases, Daniel Webb and his wife filed a personal injury lawsuit against several Defendants: Lone Wolf and its principal; Oak Leaf Outdoors, Inc., which now manufacturers the Lone Wolf tree stands (the predicate corporate transactions are discussed in more detail below); and six entities related to the seller: Cabela's Hamburg PA Store, Cabela's Retail, Inc., Cabela's Inc., Cabela's Retail PA, LLC, Cabela's Ventures, Inc., and Cabela's Wholesale, Inc. (collectively, "Cabela's"). In the second case, Liberty Surplus Insurance Corporation, which issued an insurance policy to Oak Leaf, seeks a declaratory judgment that it is not required to defend or indemnify Oak Leaf or Cabela's in the

*Webb* case.  The Webbs have settled their claims and are not proceeding against any of the Defendants.  The remaining parties have filed motions for summary judgment as to all claims.[1]

## II.  FACTS

The facts relevant to the motions for summary judgment are undisputed for the most part.  The tree stand at issue was manufactured and sold in approximately 2003.  On June 9, 2006, some of the assets of the manufacturer, Lone Wolf (a Wisconsin corporation) were sold to Weaver Enterprises (a Nevada corporation); there was no purchase of stock in Lone Wolf and no assumption by Weaver of Lone Wolf's liabilities.  On July 13, 2006, Weaver's rights were assigned to Oak Leaf, an Illinois company incorporated in 2006.  Oak Leaf then began to manufacture, sell, and distribute hunting gear, including tree stands, using the Lone Wolf name.

Oak Leaf obtained commercial general liability insurance coverage from Liberty Surplus for the period July 13, 2010 to July 13, 2011.  Specifically, Oak Leaf obtained a primary policy with a limit of $1,000,000 (the "Policy").  The Policy provided that Liberty Surplus would defend and indemnify Oak Leaf for covered bodily injury claims caused by an occurrence (including an accident) during the policy period, which encompasses the date of Mr. Webb's fall.  Oak Leaf also obtained an excess commercial general liability policy providing an additional $4,000,000 in coverage (the "Excess Policy").  It is uncontested that the availability of coverage under the Excess Policy is conditioned upon coverage under the Policy.  Cabela's is named as an additional insured under the Policy.

---

[1] Resolution of the motions has been complicated by settlements and changes in position.  Plaintiffs initially opposed Oak Leaf's motion for summary judgment, but later filed a surreply brief stating that they withdrew their opposition to the motion, based upon the insurance carrier's denial of coverage for Plaintiffs' claims.  Plffs. Surreply at 1-2.  However, on November 3, 2014, counsel for Plaintiffs reported that Plaintiffs had settled with Cabela's and also would be withdrawing their claims against Oak Leaf.  Counsel then reported that because Cabela's cross-claims against Oak Leaf remained in play, Plaintiffs thereby wished to reinstate their opposition to summary judgment to allow the cross-claims to proceed.  As Plaintiffs specifically state that they are not proceeding against any of the Defendants, however, the Court declines to rule on issues that are not actively before the Court.

Oak Leaf tendered the defense of the *Webb* action to Liberty Surplus, which initially agreed to defend and indemnify Oak Leaf, but reserved the right to deny coverage later. Liberty Surplus retained counsel of Oak Leaf's choice and assumed control of Oak Leaf's defense. Cabela's also demanded defense and indemnity from Liberty Surplus; although the circumstances of that demand are disputed, Liberty Surplus did not provide a defense to Cabela's.

## III.  STANDARD OF REVIEW

A court will award summary judgment on a claim or part of a claim where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] A fact is "material" if resolving the dispute over the fact "might affect the outcome of the suit under the governing [substantive] law."[3] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4] "On summary judgment, inferences to be drawn from underlying facts contained in (the moving party's) materials must be viewed in light most favorable to the party opposing the motion."[5]

## IV.  DISCUSSION

*A. Declaratory Judgment Action*

As to Oak Leaf, Liberty Surplus seeks a declaratory judgment that the Designated Products Exclusion to the Policy bars coverage (Count I), that there is no duty to defend or indemnify any claim for punitive damages (Count II), and there is no coverage under the Excess Policy (Count III). As to Cabela's, Liberty Surplus seeks a declaratory judgment that Cabela's

---

[2] Fed. R. Civ. P. 56(a).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4] *Id.*

[5] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970) (internal quotation omitted).

3

does not qualify as an additional insured (Count IV), that it has no duty to defend or indemnify any claim for punitive damages (Count V), and that there is no coverage under the Excess Policy (Count VI).

Oak Leaf has asserted counterclaims against Liberty Surplus for breach of contract in improperly withdrawing the defense of the product liability action (Count I) and wrongfully denying defense and indemnity coverage (Count II); for breach of contract and estoppel for withdrawing the defense and failing to identify a conflict of interest (Count III), and a declaration that Oak Leaf is entitled to indemnity in the products liability action (Count IV). Cabela's has asserted a cross-claim against Oak Leaf for breach of contract for failure to procure insurance coverage for Cabela's. The parties have fully briefed summary judgment motions on all claims.

The parties agree that Illinois law governs the interpretation of the insurance policies in this case, as the policies were issued to Oak Leaf in Illinois. Under Illinois law, "[w]hen construing insurance policies, the policy should be enforced as written unless the policy provision in question is ambiguous or contravenes public policy. In determining whether there is an ambiguity, the provision in question cannot be read in isolation but must be read with reference to the facts of the case at hand. It also must be read in conjunction with the policyholder's reasonable expectations and the coverage intended by the insurance policy."[6] Language is ambiguous where it is subject to more than one reasonable interpretation.[7] The Illinois courts will consider "only reasonable interpretations" of the policy language and "will not strain to find ambiguity where none exists."[8] Moreover, "[a]lthough policy terms that limit

---

[6] *American Family Mutual Ins. Co. v. Hinde*, 705 N.E.2d 956, 959 (Ill. App. 1999) (internal citations omitted).

[7] *Hobbs v. Hartford Insurance Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005).

[8] *Id.*

an insurer's liability will be liberally construed in favor of coverage, this rule of construction only comes into play when the policy is ambiguous."[9]  If there is an ambiguity, the Illinois courts apply "these interpretive principles most rigorously when the ambiguous term purports to limit liability or exclude insurance coverage."[10]

### 1. Oak Leaf

#### a. Estoppel

Oak Leaf asserts that Liberty Surplus is estopped from denying defense or indemnity, arguing that counsel secured by Liberty Surplus to represent Oak Leaf in the *Webb* action acted under a conflict of interest between insurer and insured.  Under Illinois law, "[i]f the insurer adequately informs the insured that it is proceeding under a reservation of rights, identifying the policy provisions that may preclude coverage, and the insured accepts defense counsel provided by the insurer, then the insurer is not estopped from asserting policy defenses."[11]  However,

> if an insurer defends its insured without disclosing a potential conflict of interest in its reservation of rights, the insurer is estopped from raising coverage defenses. An example of that situation is when the issue in the underlying tort claim and reason for denial of coverage are the same, therefore creating a potential conflict of interest between the insurer and insured. The reason for [this] doctrine is that only when the insured is adequately informed of the potential policy defense that he can intelligently choose between retaining his own counsel or accepting the tender of defense counsel from the insurer.[12]

The Illinois courts have defined a conflict of interest as follows:

> A conflict of interest that may prejudice the insured exists if, when comparing the allegations of the complaint to the policy terms, the interest of the insurer would be furthered by providing a less than vigorous defense to those allegations.

---

[9] *Id.*

[10] *TKK USA, Inc. v. Safety Nat'l Cas. Corp.*, 727 F.3d 782 , 792 (7th Cir. 2013) (applying Illinois law) (internal citation and quotation marks omitted).

[11] *Standard Mutual Insurance Co. v. Lay*, 989 N.E.2d 591, 596 (Ill. 2013).

[12] *Enterprise Leasing Co. of Chicago v. Jenkins*, 2014 WL 3906770, at * 3 (Ill. Ct. App. Aug. 11, 2014) (internal quotations and citations omitted).

> However, an insurer's interest in negating policy coverage does not in itself give rise to a conflict of interest. The insured has the burden of proving prejudice from a conflict of interest by clear, concise, and unequivocal evidence. . . . Conflicts have been found where the underlying complaint asserts claims that are covered, as well as others that the insurer is required to defend but asserts are not covered by the policy.[13]

Oak Leaf's president requested that Liberty Surplus retain the law firm of Clark Hill PLC to defend Oak Leaf, and Liberty Surplus did so.[14]  Oak Leaf maintains, however, that Liberty Surplus then used the control of the defense over the next two years to gather facts to support a denial of coverage.  The only fact so gathered to which Oak Leaf points is that of the date of sale of the tree stand; once it was confirmed that the sale occurred circa 2003, Liberty Surplus denied defense and indemnity and withdrew its defense of Oak Leaf by letter dated June 12, 2013.[15]  However, as Liberty Surplus notes, Oak Leaf itself, in notifying Liberty Surplus of the claim, raised the question of whether coverage should be directed to the prior owner because the tree stand was made and sold before Oak Leaf existed.[16]  Given this fact, the fact that Liberty Surplus hired Oak Leaf's counsel of choice, and the fact that Liberty Surplus paid defense costs for two years before obtaining the date of sale (which in itself is information one would expect to be developed in products liability litigation), Oak Leaf has failed to meet its burden of proving prejudice from a conflict of interest by clear, concise, and unequivocal evidence.

---

[13] *American Family Mut. Ins. Co. v. Westfield Ins. Co.*, 962 N.E.2d 993, 999 (Ill. Ct. App. 2011) (internal quotation and citations omitted).

[14] Oak Leaf Ex. I.

[15] Oak Leaf Ex. J.

[16] Oak Leaf Ex. O.  The Notice of Claim, which appears to have been prepared by an insurance agency based on information reported by Jared Schlips, president of Oak Leaf, includes this statement:  "NOTE: PRODUCT LIKELY MADE & SOLD PRIOR TO CURRENT OWNERSHIP OF COMPANY.  COVERAGE SHOULD GO TO PRIOR OWNER PER THEIR PRIOR AGREEMENT." *Id.*

The Court concludes therefore that Liberty Surplus is not estopped from raising defenses as to coverage of Oak Leaf.

        *b.*       *Designated Products Exclusion*

The controlling issue is whether the Designated Products Exclusion bars coverage for the Products Liability Action. The exclusion provides in relevant part:

**EXCLUSION – DESIGNATED PRODUCTS**

**Designated Product(s):**

All items sold prior to 7/13/06, to include all orders for portable tree stands and related products received and shipped prior to 7/13/06.
        *      *      *

This insurance does not apply to "bodily injury" or property damage" included in the "products-completed operations hazard" and arising out of any of "your products" shown in the Schedule.[17]

The "products-completed operations hazard" includes in relevant part "all 'bodily injury' and 'property damage' . . . arising out of 'your product" and provides that"[w]ork that may need service, maintenance, correction, repair or replacement, which is otherwise completed, will be treated as completed."[18] The Policy defines "your product" in relevant part as:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
(1) You;
(2) Others trading under your name; or
(3) A person or organization whose business or assets you have acquired; . . . .

"Your product" includes:
a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
b. The providing of or failure to provide warnings or instructions.[19]

---

[17] Policy Endorsement 9.

[18] Policy §V.16(a).

[19] Policy § V.20(a).

There is no dispute that the tree stand at issue was sold before 2006; the evidence establishes that Mr. Webb purchased the tree stand around 2003, meaning it could not have been manufactured or distributed by Oak Leaf, which did not exist at that time. Liberty Surplus maintains that the exclusion applies because the product shipped before July 13, 2006, and because Oak Leaf acquired Lone Wolf's tree stand business. Oak Leaf argues that the language "a person or organization whose business or assets you have acquired" means that a product only becomes "your product" when the entirety of an entity's business or assets are acquired, and that Oak Leaf did not acquire all of Lone Wolf's assets. Neither party cites authority from Illinois or any other jurisdiction that is precisely on point, and both sides punctuate their arguments with extreme examples designed to illustrate the unreasonableness of the other side's position.

The Court concludes that in the context of the full language of the Policy, the provision is not ambiguous: The excluded designated products are "[a]ll items sold prior to 7/13/06, to include all orders for portable tree stands and related products received and shipped prior to 7/13/06," and regardless of the full scope of the relevant corporate transactions, the parties do not dispute that Oak Leaf acquired the use of the name Lone Wolf for tree stands or that Oak Leaf has sold tree stands under the Lone Wolf name. Therefore, because Oak Leaf acquired Lone Wolf's tree stand business, and because the tree stand was shipped before 2006, the exclusion bars coverage. This conclusion is further supported by the fact that if the exclusion did not apply to Lone Wolf tree stands, there would be no point to it: Oak Leaf did not exist until July 13, 2006, and could not have shipped any items, tree stands or otherwise, before that date.

Oak Leaf also argues that the exclusion does not apply because the *Webb* complaint alleged that Oak Leaf failed to recall the tree stand, which is not a claim covered by the exclusion. But the failure to recall claim does not exist in a vacuum; it presupposes that there is a defect with the product (as anticipated by products-completed operations hazard, which includes work that may need correction, repair or replacement), and therefore the exclusion still applies.

  2. *Cabela's*

    a. *Estoppel*

Cabela's asserts that as a vendor it is an additional insured under the Policy, and that it asserted a claim for additional insurance coverage in 2011, a demand to which Liberty Surplus did not respond for some 30 months. According to Cabela's, Liberty Surplus delayed issuing the denial of coverage until nine days before the filing of this declaratory judgment action. Therefore, according to Cabela's, Oak Leaf is estopped from denying coverage. Liberty contends that it did not receive this 2011 demand until 2013, and that it denied coverage within six months, a reasonable time.[20] Although the Court notes that the 2011 letter was addressed to Oak Leaf, not to Liberty Mutual (apparently with a copy to the insurer),[21] the Court need not resolve this dispute because estoppel principles do not apply here.

"Illinois courts have followed the general rule that the doctrine of estoppel cannot be used to create primary liability or to increase coverage provided under an insurance

---

[20] *See State Auto. Mut. Ins. Co. v. Kingsport Dev., LLC*, 846 N.E.2d 974, 987-88 (Ill. Ct. App. 2006) (holding that a seven-month period is deemed a reasonable delay)

[21] The parties have not produced a copy of the letter that includes the second page, which apparently includes a notation that it was copied to the insurer.

9

policy."[22] Based on the law of other jurisdictions, the Illinois courts have noted two possible exceptions to this general rule: first, "where an insurer misrepresents the extent of coverage to an insured, thereby inducing the insured to purchase coverage which does not in fact cover the disputed risk," and second as discussed above with regard to Oak Leaf, "where an insurer defends an action on behalf of an insured, with knowledge of facts that would provide a defense to coverage, but without a reservation of rights."[23] Neither of these exceptions applies to Cabela's: Cabela's did not obtain the policy from Liberty Surplus, and Cabela's never received a defense from Liberty Surplus.[24] Therefore, estoppel does not apply, and Cabela's must be able to show that it is entitled to coverage under the Policy.

### b. Additional Insured

Cabela's bases its status as an additional insured on the following language in the Policy:

> WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (referred to above as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" solely arising out of a defect of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business . . . [25]

The referenced Schedule defines the person or organization as:

> Any vendor with whom you have agreed, in a written contract, that such vendor should be added as an additional insured on your policy, provided such written

---

[22] *Nationwide Mut. Ins. Co. v. Filos*, 673 N.E.2d 1099, 1103 (Il. Ct. App. 1996) (citations omitted).

[23] *Id.* at 1103-04.

[24] The cases cited by Cabela's all concern the duty to defend. *See Elec. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 346 F. Supp. 2d, 958 (N.D. Ill. 2004); *West American Ins. Co. v. J.R. Const. Co.*, 777 N.E. 2d 610 (Ill. App. Ct. 2002); *Central Mut. Ins. Co. v. Kammerling*, 571 N.E.2d 806 (Ill. App. Ct. 1991).

[25] Endorsement No. 3 to Policy.

contract is fully executed prior to an "occurrence" in which coverage is sought under this policy for any of "your products" sold by the vendor.[26]

The Schedule further defines "your products" as "[a]ll products manufactured, sold or distributed by Oak Leaf Outdoors, Inc. dba Lone Wolf Portable."[27] Liberty Mutual disclaims coverage to Cabela's on two grounds: first, that there is no fully executed contract between Cabela's, as vendor, and Oak Leaf, and second, that the definition of "your products" in the endorsement excludes coverage for the tree stand at issue. Cabela's does not dispute that the 2010 vendor's agreement was not fully executed as it was not signed by a representative of Oak Leaf.[28] Given that there was a long-standing vendor relationship between Cabela's and Oak Leaf that predated both the effective date of the Policy and the date of Mr. Webb's accident, and given that Oak Leaf did seek to name Cabela's as an additional insured, which manifests an acceptance of the vendor-seller relationship embodied in the agreement, the Court is not prepared to rule as a matter of law that the apparent lack of signature bars coverage.

However, although Cabela's is an additional insured, it can only recover pursuant to the terms of the Policy. For the same reasons that there is no coverage for Oak Leaf, the named insured, there is also no coverage for Cabela's under the Designated Products Exclusion.[29]

Cabela's, however, also argues that an ambiguity is created by virtue of the difference between the definition of covered products as "[a]ll products manufactured, sold or distributed by Oak Leaf Outdoors, Inc. dba Lone Wolf Portable," and the definition of "your product" in the Designated Products Exclusion. However, the sections of the Policy, read together, are not

---

[26] Schedule to Endorsement No. 3 to Policy.

[27] *Id.*

[28] The vendor's agreement states that "[a]ll Cabela's Vendors Agreements require a signature, or an e-mailed message with approval." There is no evidence of record that Lone Wolf executed the agreement by way of an e-mailed message of approval.

[29] *See James McHugh Const. Co. v. Zurich American Ins. Co.*, 927 N.E.2d 247, 252-53 (Ill. App. Ct. 2010).

conflicting or ambiguous: the clear intent of the Policy was to exclude from any coverage any products not made or sold by Oak Leaf.

    *c.*  *Cross-Claim for Breach of Contract*

At the time that Mr. Webb purchased the tree stand from Cabela's, Oak Leaf did not exist. The only contract alleged to exist between Oak Leaf and Cabela's is a vendor's agreement dated January 1, 2010. The contract provides that all vendors and suppliers must have product liability insurance coverage that names Cabela's. It is undisputed that Oak Leaf complied with this provision. The contract does not require Oak Leaf to provide liability coverage for products that were manufactured and sold before Oak Leaf came into existence, and Cabela's offers no argument to otherwise support a cross-claim for breach of contract.

    B.  *Products Liability Action*

The only claims remaining to be determined in the *Webb* action are the cross-claims that Cabela's has asserted against Oak Leaf for contribution and indemnity. Under well-established Pennsylvania law, which the parties agree governs these claims, "[s]econdary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law, or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible. . . ."[30] Oak Leaf did not manufacture the tree stand (and indeed, did not exist at the time of manufacture); therefore, it can only be subject to contribution or indemnity if there is a basis for liability against it. Cabela's asserts that Oak Leaf is potentially liable based upon the product-line exception to the general

---

[30] *Builders Supply v. McCabe*, 77 A.2d 368, 371 (1951).

rule of successor liability, that the purchaser in an asset sale does not acquire the seller's tort liabilities.

The product-line exception holds that when a corporation acquires the manufacturing assets of another corporation and undertakes essentially the same manufacturing operation, "the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its predecessor."[31] The Pennsylvania Supreme Court has not decided whether to adopt the product-line exception,[32] but has expressed its view as to the contours of the exception. In doing so, the court concluded it was not error for a trial court to instruct a jury to consider factors such as whether the corporation advertised as an ongoing enterprise, maintaining the same clients and products and exploiting the original manufacturer's reputation.[33] The other factors to be considered are "the virtual destruction of plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business; . . . the successor's ability to assume the original manufacturer's risk-spreading role and the fairness of requiring the successor to assume responsibility for defective products that were a burden attached to the original manufacturer's goodwill being enjoyed by the successor in the continued operation of the business."[34]

---

[31] *Dawejko v. Jorgensen Steel Co.*, 434 A.2d 106, 110 (Pa. Super. Ct. 1981).

[32] *Schmidt v. Boardman Co.*, 11 A.3d 924, 944 (Pa. 2011). The court in *Schmidt* found that the appellant had waived the claim as to the applicability of the product-line exception, and therefore did not decide whether Pennsylvania recognizes the exception. *See id.* at 946 ("The question of whether the product-line exception should be maintained in Pennsylvania is waived, and, thus, our consideration of it is postponed.").

[33] *Id.* at 929 (quoting trial court).

[34] *Id.* at 929-30 (quoting trial court). Although the Court of Appeals for the Third Circuit, interpreting Pennsylvania law, earlier held that each factor must be met for the product-line exception to apply, see *Kradel v. Fox River Tractor Co.*, 308 F.3d 328, 332 (3d Cir. 2002) (citing *Hill v. Trailmobile, Inc.*, 603 A.2d 602 (Pa. Super. Ct. 1992)), the court in *Boardman* held it was appropriate for the jury to balance the factors in determining whether the exception applies. *Boardman,* 11 A.3d at 945.

The product-line exception is appropriately one to be asserted by a plaintiff against a defendant; in other words, to insure the compensation of innocent victims, and only when there is no other remedy for a plaintiff as a result of the corporate transactions.[35]  The exception is inapplicable where "the question is not the remedies available to a tort victim, but the rights and duties *inter se* of two corporations."[36]  Plaintiffs are no longer proceeding against any Defendants.  Because the only remaining issues are the cross-claims between the corporate defendants, the Court will grant the motion for summary judgment as to these claims.[37]

## IV.   CONCLUSION

As a matter of law, there is no coverage to Oak Leaf or Cabela's under the relevant insurance policies for the claims asserted by Plaintiffs in the *Webb* action.  Summary judgment will therefore be granted in favor of Liberty Surplus on all defense and indemnity claims.  Also as a matter of law, Cabela's has no valid cross-claim against Oak Leaf in either action and summary judgment will be entered in favor of Oak Leaf.  Appropriate orders will be entered.

---

[35] *See Dawejko*, 434 A.2d at 111; *Keselyak v. Reach All, Inc.*, 660 A.2d 1350, 1354 (Pa. Super. Ct. 1995).

[36] *Shorb by Shorb v. Airco, Inc.*, 644 F. Supp. 923, 928 (E.D. Pa. 1986).

[37] *See Boscov's Dep't Store, Inc. v. Lear Siegler, Inc.*, No. 96-897, 1996 WL 626277, at *3-4 (E.D. Pa. Oct. 29, 1996) (holding that the retailer could not obtain contribution or indemnity based on the product-line exception as the destruction of the injured party's remedy is a necessary condition to successorship liability).